UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF WEST VIRGINIA

**MICHAEL JERMAINE GREENE,**

      **Plaintiff,**

v.                                                              **Case No. 5:16cv51**
                                                                **(Judge Stamp)**

**SIDNEY FEASTER and
DOUG WHITE,**

      **Defendants.**

<u>**REPORT AND RECOMMENDATION**</u>

**I.  <u>Procedural History</u>**

On April 18, 2016, the *pro se* Plaintiff, an inmate then-incarcerated at the Northern Correctional Facility[1] in Moundsville, West Virginia, initiated this case by filing a filing a civil rights complaint against the above-named Defendants pursuant to 42 U.S.C. § 1983. ECF No. 1.  Along with his complaint, Plaintiff filed a motion to proceed in forma *pauperis* with supporting documents. ECF Nos. 2, 3, & 4.  The Plaintiff was granted permission to proceed as a pauper and directed to pay an initial partial filing fee ("IPFF") on April 26, 2016. ECF No. 7. Pursuant to a June 20, 2016, Show Cause Order, Plaintiff was directed to show cause why his case should not be dismissed for the failure to prosecute.  ECF No. 11.  Plaintiff filed a response to the Show Cause Order on June 23, 2016.  On July 6, 2016, Plaintiff paid the IPFF. ECF No. 16.  On August 8, 2016, Plaintiff moved to voluntarily dismiss his case. ECF No. 20.  By Order entered August 10, 2016, the motion to dismiss was granted; the case was dismissed without prejudice; the IFP Order was vacated; and Plaintiff was relieved of the obligation to pay the balance of his filing fee. ECF No. 21 at 1.  On August 12, 2016, Plaintiff filed a Notice of Voluntary Dismissal. ECF No. 23.  On September 6, 2016, Plaintiff wrote a letter to the Clerk of Court, attaching a Memorandum from the Huttonsville Correctional Center.

---

[1] Petitioner is now incarcerated at the Mt. Olive Correctional Center ("MOCC") in Mt. Olive, West Virginia.

ECF No. 27. By Order entered September 7, 2016, the letter was construed as a motion to reopen the case; the case was reopened and reinstated to the active docket; and the IFP order was reinstated. ECF No. 28. On September 28, 2016, Plaintiff filed a jury trial demand and a motion to appoint counsel.  ECF Nos. 30 & 31.  On October 5, 2016, the  undersigned conducted a preliminary review of the complaint, determined that summary dismissal was not warranted at that time and directed the Defendants to answer the complaint. ECF No. 33.  On November 3, 2016, the Defendants filed a Motion to Dismiss, or in the Alternative, Motion for Summary Judgment with a memorandum in support, attaching an affidavit and an exhibit. ECF Nos. 39 & 40.   On November 7, 2016, a Roseboro[2] Notice and Direction to Clerk to correct the spelling of the Defendants' names on the docket was issued.  ECF No. 43.  Plaintiff filed a response in opposition on November 23, 2016. ECF No. 51.  On December 5, 2016, Defendants filed a reply.  ECF No. 52.  On March 1, 2017, Plaintiff filed a document docketed as Supplemental Evidence, attaching copies of four Inmate Medical Service Requests. ECF No. 54.

Accordingly, this case is before the undersigned for review, report and recommendation.

## II. Contentions of the Parties

### A.  Plaintiff's Complaint

In the complaint, the Plaintiff raises three claims:

1) excessive force, arising out of a February 1, 2016 incident at Huttonsville Correctional Center ("HCC") during which he was pepper-sprayed;

2) retaliation by the Defendants and possibly other correctional officers for "filing paper work," by making on of his sick call requests go missing [ECF No. 1-1 at 2]; and

3) deliberate indifference to serious medical needs, because he did not receive timely or adequate medical care after the pepper-spray incident.

Plaintiff contends he exhausted his administrative remedies with regard to these claims but got no response to any of his grievances.  Id. at 5.

---

[2] Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

As relief, the plaintiff seeks $200,000.00 in damages. Id. at 10.

**B.  Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment**

The Defendants contend that the complaint must be dismissed or summary judgment granted in their favor, because

1) Plaintiff's complaint fails to state a claim upon which relief can be granted [ECF No. 40 at 4];

2) Defendants are entitled to qualified immunity [id. at 7];

3) Plaintiff's injury from the incident was *de minimis* [id. at 10];

4) Plaintiff does not state a cognizable excessive force claim [id. at11]; and

5) Plaintiff does not state a cognizable deliberate indifference claim.  Id. at 13.

**C. Plaintiff's Response**

Plaintiff reiterates some of his claims and attempts to refute the Defendants' arguments on the same. ECF No. 51 at 1 – 2.

**D.  Defendants' Reply**

Defendants note that Plaintiff's response effectively admits that his complaint cannot survive their dispositive motion; fails to address the arguments made in that motion; and only restates his "deficient allegations" without explaining why his complaint should survive a summary judgment motion.  ECF No. 52 at 1 – 2.

### III.  Standard of Review

**A. Motion to Dismiss**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal of a case when a complaint fails to state a claim upon which relief can be granted. Dismissal under Rule 12(b)(6) is inappropriate unless it appears beyond doubt that the plaintiff cannot prove any set of facts to support his or her allegations. Revene v. Charles County Comm'rs, 882 F.2d 870 (4th Cir. 1989).  Courts, however, are not required to accept conclusory allegations couched as facts and nothing more when ruling on a

3

motion to dismiss pursuant to 12(b)(6). A complaint must include "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S. Ct.1955, 167 L. Ed.2d 929 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss a plaintiff must state a plausible claim in his complaint that is based on cognizant legal authority and includes more than conclusory or speculative factual allegations. "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" because courts are not bound to accept as true a legal conclusion couched as a factual allegation. Id.; see also Nemet Chevrolet, Ltd. v. Comsumeraffairs.com, Inc., 591 F.3d 250 (4th Cir. 2009). "[D]etermining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense." Id.

Whether a complaint is legally sufficient is measured by whether it meets the standards for a pleading stated in the Federal Rules of Civil Procedure. See Fed.R.Civ. P 8 (providing general rules of pleading), Fed.R.Civ. P. 9 (providing rules for pleading special matters), Fed.R.Civ. P. 10 (specifying pleading form), Fed.R.Civ. P. 11 (requiring the signing of a pleading and stating its significance), and Fed.R.Civ. P. 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted.) Francis v. Giacomelli, 588 F.3d 186 (4th Cir. 2009).

Greene is representing himself, which requires the Court to liberally construe his pleadings. Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251(1976); Haines v. Kerner, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)(per curiam); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978); Gordon v. Leeke, 574 F.2d 1147 (4th Cir. 1978). While *pro se* pleadings are held to a less stringent standard than those drafted by attorneys, Haines, 404 U.S. at 520, even under this less stringent standard, a *pro se* complaint is still subject to dismissal. Id. at 520-21. The mandated liberal

construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. Barnett v. Hargett, 174 F.3d 1128 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. Small v. Endicott, 998 F.2d 411 (7th Cir. 1993).  Nor should a court "conjure up questions never squarely presented." Beaudett v. City of Hampton, 775 F.2d 1274 (4th Cir. 1985).

Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment. Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30 (1st Cir. 2001)(cited with approval in Witthohn v. Federal Ins. Co., 164 Fed. Appx. 395 (4th Cir. 2006) (unpublished)). There are, however, exceptions to the rule that a court may not consider any documents outside of the complaint. Specifically, a court may consider official public records, "documents incorporated into the complaint by reference, and matters of which the court may take judicial notice," or sources "whose accuracy cannot reasonably be questioned." Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462 (4th Cir. 2011).

**B. Motion for Summary Judgment**

A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The Court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the  motion and of establishing the nonexistence of genuine

issues of fact. Celotex, 477 U.S. at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita, 475 U.S. at 586. The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but ... must set forth specific facts showing that there is a genuine issue for trial.' Anderson, 477 U.S. at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, 475 U.S. at 587.

### IV. Analysis

#### A. Excessive Force

In general, the Eighth Amendment prohibits "cruel and unusual punishment." Farmer v. Brennan, 511 U.S. 825 (1994). The cruel and unusual punishment clause of the Eighth Amendment applies to the States through the Due Process Clause of the Fourteenth Amendment to the United States Constitution. See Wilson v. Seiter, 501 U.S. 294 (1991).

In order to comply with the Eighth Amendment, prison punishment must comport with "the evolving standards of decency that mark the progress of a maturing society." Estelle v. Gamble, 429 U.S. 97, 102 (1976). "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. at 837.

Moreover, while courts should give deference to a jail official's determination of what measures are necessary to maintain discipline and security, "the unnecessary and wanton infliction of

6

pain" constitutes cruel and unusual punishment which is prohibited by the Eighth Amendment. Whitley v. Albers, 475 U.S. 312, 321-22 (1986).    In order for a plaintiff to prove a claim of excessive force, the plaintiff must first establish that "the alleged wrongdoing was objectively 'harmful enough' to establish a constitutional violation."  Norman v. Taylor, 25 F.3d 1259, 1262 (4th Cir. 1994) (*en banc*), cert. denied, 513 U.S. 1114 (1995)(quoting Hudson v. McMillian, 503 U.S. 1, 8 (1992)).  Second, the plaintiff must show that the prison officials inflicted unnecessary and wanton pain and suffering.  Hudson, 503 U.S. at 6; Williams v. Benjamin, 77 F. 3d 756 (4th Cir. 1996).

With regard to prison disturbances, whether unnecessary and wanton pain and suffering was inflicted "ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'"  Whitley,  475 U.S. at 320-21.  In determining whether the defendant acted maliciously and sadistically, the following factors should be balanced: (1) "the need for application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of the injury"; (4) the threat reasonably perceived by the responsible official; and (5) "any efforts made to temper the severity of a forceful response."  Id. at 321; see also Williams, 77 F. 3d at 762.

 Moreover, in the Fourth Circuit, "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is *de minimis.*"  Norman, 25 F.3d at 1263.  In Norman, a jail officer swung his cell keys in the direction of the prisoner's face when the prisoner became disruptive.  The prisoner asserted that he put his hands up to cover his face and the keys hit his thumb, causing his hand to swell.  The Court ruled that the prisoner sustained *de minimis* injuries, proving that *de minimis* force was used.  Further, in Taylor v. McDuffie, 155 F.3d 479 (4th Cir. 1998), *cert. denied*, 525 U.S. 1181 (1999), the Fourth Circuit found that a detainee who received "abrasions on his wrists and ankles, slight swelling in the jaw area, tenderness over some ribs and some excoriation of the mucous membranes of the mouth" as a result of an incident had sustained *de minimis* injuries.  On the other hand, the United States Supreme Court has found that

7

"bruises, swelling, loosened teeth and a cracked dental plate" are not *de minimis*. Hudson 503 U.S. at 10.

Although a *de minimis* injury reveals that *de minimis* force was used, Id. at 1262, the Fourth Circuit has held that in certain circumstances, a claim may be made even if the injury is *de minimis*. Specifically, the Fourth Circuit has stated:

> There may be highly unusual circumstances in which a particular application of force will cause relatively little, or perhaps no, enduring injury, but nonetheless will result in an impermissible infliction of pain.   *Cf.* Hudson, 503 U.S. at ----, 112 S.Ct. at 1000 ("diabolic" or "inhuman" physical punishment unconstitutional, regardless of injury).   In these circumstances, we believe that either the force used will be "of a sort 'repugnant to the conscience of mankind,' and thus expressly outside the *de minimis* force exception, see Hudson, 503 U.S. at ----, 112 S.Ct. at 1000 (citations omitted), or the pain itself will be such that it can properly be said to constitute more than *de minimis* injury.

Norman, at 1264, n. 4.

Recognizing the principle that an injury does not have to be visible to be impermissible, the Fourth Circuit has held that "[m]ankind has devised some tortures that leave no lasting physical evidence of physical injury."   Williams v. Benjamin, 77 F.3d 756, 762 and 762 n.2 (4th Cir. 1996)(inmate was strapped down, spread-eagled, for 8 hours in 4-point restraints after being sprayed with mace and not permitted to wash it off, use a toilet, or receive medical attention).   See also Jordan v. Gardner, 986 F.2d 1521, 1526, 1546 (9th Cir. 1993) (*en banc*)(the psychic pain female prisoners suffer when subjected to cross-gender pat down search satisfies the objective component of an 8th Amendment analysis, i.e., whether an injury inflicted is sufficiently serious).   Consistent with this principle, the Fourth Circuit has held that the beating of a handcuffed inmate about the head and neck by prison guards, one of whom held the inmate's cuffed hands, in retaliation for his "mere use of a racial slur" may be force "of a sort 'repugnant to the conscience of mankind," even though the injuries sustained by the inmate were not severe.   Melvin v. North Carolina Department of Corrections, 1995 U.S. App. LEXIS 23300 at *3 (4th Cir. Aug. 21, 1995) (per curiam) (unpublished) *quoting* Norman v. Taylor, *supra* at 1263 n.4.

BOP Operations Memorandum 001-2015 (now BOP Program Statement 5576.04), in effect at the time of the February 1, 2016 incident, governs the use of oleoresin capsicum ("OC") spray, commonly referred to as "pepper spray."  Section 8 of that memorandum states:

> 8. Decontamination procedures include fresh air and water rinsing.  Within 15 minutes after OC has been applied, or as soon as possible, the inmate shall be allowed to wash with soap and water all areas affected by the agent, or assisted by staff as necessary. Normally, this is completed before the medical assessment.

BOP Operations Memorandum, 2/26/2015. There is no specific requirement within the memorandum mandating how long an inmate should wash after OC exposure.

In this case, the Plaintiff alleges that on the afternoon of Monday, February 1, 2016, he pushed his cell light to talk to staff but did not get a response "for at least an hour or so." ECF No. 1 at 7. Because he got no response, Plaintiff admits that he began "repeatedly hitting . . . [his] cell light again" and then kicked his cell door "a good (2) two to (3) three times." Defendant Feaster and Defendant White came to his cell door and told him to stop kicking or he would be sprayed.   Id. Plaintiff asserts that he replied "OK, no problem" and the two officers then walked a short distance away, where he overheard them say "we can see it on the camera." Id. at 8.  The officers then returned and told him to back up; Plaintiff complied; Defendant White then ordered Defendant Feaster to spray Plaintiff. Id.  Plaintiff contends that Feaster then sprayed him for to 2 – 3 seconds and then the Defendants left him in his cell for at least five minutes before permitting him to shower. Id. Even then, they only let him shower for "five minutes tops." Id. at 8.  Plaintiff contends he told the Defendants that he needed more time "but they turned the water off on me when I was supposed to have been under cold water for at least (15) more minutes . . . [b]ecause they sprayed so much of the big can in my  . . . cell and left me in the cell to breath[e] it all in for at least . . . five minutes." Id. Attached to Plaintiff's complaint is a February 10, 2016 response to his Grievance # Hcc-E1-47, which states in pertinent part:

> On 01 February 2016 staff on unite E-1 did address the issue of you repeatedly hitting your call light. You then began kicking your cell door. Staff did address This [sic]

issue with you several times, due to your escalation in behavior you were exposed to Oloeresin [sic] Capsicum.   You were then removed from your cell and decontaminated.  Once decontaminated you were Assessed [sic] by medical staff. At this time you had no complaints and you were returned to your cell.

ECF No. 1-1 at 3.

Defendants Feaster and White deny that anything other than reasonable force was used to get Plaintiff to stop repeatedly hitting his cell light and kicking his cell door when he was told to, but when his behavior escalated, he was subjected to pepper spray.  ECF No. 40 at 2.  In support of this, they attach a sworn affidavit by Marvin Plumley, HCC Warden, attesting to the fact that the HCC's Use of Force Committee reviewed reports of the February 1, 2016 incident and concluded that the Defendants' use of force was "minimal and justified." ECF No. 40-1 at 1.

Also attached to the Defendants' memorandum in support is a February 3, 2016 memorandum to Marvin Plumley, HCC Warden, from AWS Bryan K. Lanham, regarding the "Use of Force Review Committee Findings on Greene, Michael #3520461," stating in pertinent part, that:

> [o]n Monday 01 February 2016, at approximately 1626 hours, COII Sydney Feaster did respond to Cell # 41 on Unit E-1 housed by I/M Greene, Michael # 3520461, due to him kicking his cell door. COII Feaster did give multiple direct orders to stop kicking his cell door. I/M Greene refused by continuing to kick his cell door. At this time COII Feaster did deploy two . . .  one . . . second burst[s] of Sabre Red MK-IX (Tag # A1112) into I/M Greene's cell. Lt. Gary Arbogast was notified of the incident and reported to the cell and instructed him to submit to mechanical restraints.  I/M Green did comply at this time and was removed from his cell.  COII Mathew [si]c Balducci did place a spit hood on I/M Greene. I//M Greene was escorted to shower #1 on Unite E-1 to begin the decontamination process. Upon completion of the decontamination process, I/M Green was medically assessed by RN Dana Mahanes. I/M Greene['s] assigned cell was decontaminated and I/M Green was returned to his cell without further incident.
>
> After a review of video footage and written reports, it is the findings [sic] that the force used was minimal and justified.

ECF No. 40-2 at 1.

Also attached to Defendants' memorandum in support was a copy of an Incident Report filed by Defendant Feaster over the incident, stating in pertinent part that:

[o]n Monday 01 February 2016 at approx. 1626 hours I CO II Sidney Feaster did respond to cell 41 on unit E-1 which Inmate Green, Michael # 3520461 is housed[.] inmate was kicking his cell door at this time I CO II Sidney Feaster did give multiple direct orders to stop kicking the cell door[.] Inmate Greene continued to kick the cell door.  At this time I CO II Feaster did deploy two one second burst of Sabre red MK 9 tag #A1112.   I CO II Feaster did assist in escorting inmate Greene to the decontamination shower on unite E-1. When decontamination was complete I also escorted inmate Greene . . . to the front of the E-1 control room to be assessed by RN Dana Mahanes . . .

Id. at 3.

Defendant White's report of the incident was that

[o]n Monday 01 February 2016 at approx. 1636 hours I Cpl. Doug White did go to cell 41 on unit E-1 due to inmate Greene, Michael . . . kicking the cell door. I Cpl. White did escort . . . Greene . . . from cell 41 to the decontamination shower on unit E-1. When decontamination was complete I . . . did escort . . . Green and placed him in front of the E-1 Control room.

Id. at 5.

A report of the incident was also created by Matthew Balducci, C.O. II, stating:

On Monday 01 February 2016, at approximately 1630 hrs, I, Correctional Officer II Matthew Balducci did respond to an incident on Unit E-1 with Inmate Greene, Michael . . . I . . .provided extra security on Unit E-1. Then at approximately 1636 hrs Inmate Greene . . . was taken out of Cell 41 at that time I . . . did place a spit hood onto Inmate Greene . . . I . . . then provided extra security during the decontamination process. At approximately 1705 hrs I . . . .along with Corporal Doug White did escort Inmate Greene . . . back onto the Unit E-1 pod and placed I/M Greene . . . into shower number 1.  At approximately 1710 hrs I . . . then removed all of the magnets off of the cell door windows.

Id. at 7.

Correctional Officer II Timothy Herron was also on duty that day, and provided his

version of the event:

[a]t approximately 1428 I COII Timothy Heerron did respond to an incident on unit E-1 with I/m Greene Michael . . . Lt. Robert Kesling did tell me . . . to get the camera and record the incident. I . . . did record the entire incident through the decontamination process.

Id. at 9.

An Incident Report was also prepared by Lt. Gary Arbogast, who stated

11

> [o]n 01 February 2016 at approximately 1630 hrs. I Lt. Gary Arbogast was notified by Lt. Robert Kesling that inmate Green, Michael . . .had been exposed to Oleoresin Capsicum.  At approx.. 1632 hrs. I did arrive on unit E-1 and was briefed by Lt. Kesling. At approx. 1636 hrs. I did approach Cell 41 . . . housing Inmate Greene. Once at the cell door I did instruct . . . greene [sic] to cuff up at wich [sic] time he did comply.  Inmate Greene was secured and removed from his cell and escorted to the shower for decontamination.  Once decontaminated . . . Green was assessed by nurse Dana Mahanes. Inmate Greene was returned to his cell without further incident.

Id. at 11.

> Finally, Dana Mahanes RN prepared her own report of the incident:

> [o]n February1st, 2016 at approximatley [sic] 1640 called to E-1 to assess Inmate Greene Michael . . . after decontamination of a chemical agent.  Inmate Greene . . . denied any injuries, vital signs stable, instructed Inmate Greene . . . if experienced any symptoms or further complaints to notify Medical[.] Inmate Greene . . . voiced understanding.

Id. at 13.

Plaintiff's response in opposition claims that "the named defendants unlawfully used the spray on me for no reason at the time and then only allowed me to shower in  cold water for . . . five minutes (TOPS) when I was suppose[d] to have been under cold water for at least . . . fifteen more minutes." ECF No. 51.

Here, even when drawing all reasonable inferences in Plaintiff's favor, the Court finds that Plaintiff admits that when he did not receive what he thought was a sufficiently timely response to his pushing his cell light to talk to staff, he repeatedly hit his cell call light; when told to stop that, he began repeatedly kicking his cell door.  The response to his grievance, attached to his complaint, provides even more information: after the staff addressed the issue of Plaintiff's repeatedly hitting his call light, he then he began kicking his cell door; staff then verbally redirected him on that issue several times before finally resorting to pepper spray.

Accordingly, it is apparent that Plaintiff was subjected to pepper-spray as a "good faith effort to maintain or restore discipline," not "maliciously and sadistically for the very purpose of causing harm.'" Whitley, 475 U.S. at 320-21. The ample record before me indicates that Plaintiff did not

respond to the Defendants' verbal directions to cease with the call light and cell-door-kicking misconduct; thus, the need for application of force was warranted. Plaintiff, by his own admission, was only sprayed for  2 – 3 seconds. The correctional officers properly concluded that Plaintiff was not responding to verbal commands before they used force.  Id. at 321; see also Williams, 77 F. 3d at 762.  By every involved staff member's account of the incident, Plaintiff was given the opportunity to shower within fifteen minutes of the incident, consistent with BOP Operations Memorandum 001-2015. Finally, Plaintiff's injury appears to have been negligible; he does not contend he suffered any permanent injury.  As the Fourth Circuit has held, "absent the most extraordinary circumstances, a plaintiff cannot prevail on an Eighth Amendment excessive force claim if his injury is *de minimis*." Norman, 25 F.3d at 1263. This claim should be dismissed.

## B.  Retaliation

Plaintiff claims that "these named C.O.'s and other C.O.'s will retaliate against me because I file paper work and when I do they try to hide it.  The next morning I did write a sick call request and gave it to the nurse yet somehow it went missing so I had to write another . . . one." ECF No. 1-1 at 2.

To prevail on a claim of retaliation, Plaintiff must show that the retaliatory act was taken in response to the excise of a constitutionally protected right. See Ogunvale v. Esparza, No. 2:07cv52, 2008 WL 2902161 (N.D. W.Va. July 25, 2008) (citing Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994), *cert. denied*, 514 U.S. 1022 (1995) ("In establishing a retaliation claim, a plaintiff must allege that the retaliatory action was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right.").  While inmates do have a constitutional right to medical care, here, Plaintiff appears to take issue because one of his sick call requests, filed the after the incident, "came up missing." ECF No. 54 at 1; see also id. at 5. It is apparent from the copies of Inmate Medical Services Requests Plaintiff provided that he submitted another one on February 3, 2016 when the February 2, 2016 request was not received.  See id. at 5 and id. at 2. He also

submitted one on February 7, 2016 and another on February 11, 2016; he does not allege that any of these requests "came up missing."

Moreover, Plaintiff must allege specific facts supporting his claim of retaliation; bare assertions are insufficient to establish a constitutional claim. Adams, 40 F.3d at 74-75. *"[I]n forma pauperis* plaintiffs who claim that their constitutional rights have been violated by official retaliation must present more than naked conclusory allegations of reprisal to survive [§ 1915(e)(2)(B)]." Id. Furthermore, claims of retaliation are treated with skepticism in the prison context. Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996).

Here, Plaintiff's bald assertion that because one sick call request, handed directly by him to a nurse went astray, the Defendants were retaliating against him, is merely a conclusory allegation, insufficient to establish a constitutional claim. Adams, 40 F.3d at 74-75. Plaintiff's claim is self-serving; it provides no evidence to support even a *prima facie* case of retaliation. This claim should be dismissed.

**D.  Deliberate Indifference**

To state a claim under the Eighth Amendment for ineffective medical assistance, the plaintiff must show that the defendant acted with deliberate indifference to his serious medical needs.  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  To succeed on an Eighth Amendment cruel and unusual punishment claim, a prisoner must prove: (1) that objectively the deprivation of a basic human need was "sufficiently serious," and (2) that subjectively the prison official acted with a "sufficiently culpable state of mind."  Wilson v. Seiter, 501 U.S. 294, 298 (1991).

A serious medical condition is one that has been diagnosed by a physician as mandating treatment or that is so obvious that even a lay person would recognize the need for a doctor's attention.  Gaudreault v. Municipality of Salem, Mass., 923 F.2d 203, 208 (1st Cir. 1990), cert. denied, 500 U.S. 956 (1991).  A medical condition is also serious if a delay in treatment causes a life-long handicap or permanent loss.  Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326,

347 (3rd Cir. 1987), <u>cert. denied</u>, 486 U.S. 1006 (1988).[3]   The Fourth Circuit has gone one step

further under the objective component analysis, by requiring not only that the condition be serious,

but also that a prisoner provide evidence that his condition was not timely or properly treated.

<u>Harden v. Green</u>, 2001 WL 1464468, *3 (4th Cir. Nov. 19, 2001).

    The subjective component of a cruel and unusual punishment claim is satisfied by showing

that the prison official acted with deliberate indifference.   <u>Wilson</u>, 501 U.S. at 303.   A finding of

deliberate indifference requires more than a showing of negligence.   <u>Farmer v. Brennan</u>, 511 U.S.

825, 835 (1994).   A prison official "must both be aware of facts from which the inference could be

drawn that a substantial risk of serious harm exists, and he must also draw the inference."   <u>Id.</u> at 837.

A prison official is not liable if he "knew the underlying facts but believed (albeit unsoundly) that the

risk to which the fact gave rise was insubstantial of nonexistent."   <u>Id.</u> at 844.

    "To establish that a health care provider's actions constitute deliberate indifference to a

serious medical need, the treatment, [or lack thereof], must be so grossly incompetent, inadequate, or

excessive as to shock the conscience or to be intolerable to fundamental fairness."   <u>Miltier v. Beorn</u>,

896 F.2d 848, 851 (4th Cir. 1990).   A mere disagreement between the inmate and the prison's medical

staff as to the inmate's diagnosis or course of treatment does not support a claim of cruel and unusual

punishment unless exceptional circumstances exist.   <u>Wright v. Collins</u>, 766 F.2d 841, 849 (4th Cir.

1985).   A constitutional violation is established when "government officials show deliberate

---

[3] The following are examples of what does or does not constitute a serious injury.  A rotator cuff injury is not a serious medical condition.  <u>Webb v. Prison Health Services,</u> 1997 WL 298403 (D. Kansas 1997). A foot condition involving a fracture fragment, bone cyst and degenerative arthritis is not sufficiently serious. <u>Veloz v. New York</u>, 35 F.Supp.2d 305, 312 (S.D.N.Y. 1999).   Conversely, a broken jaw is a serious medical condition.  <u>Brice v. Virginia Beach Correctional Center</u>, 58 F. 3d 101 (4th Cir. 1995); a detached retina is a serious medical condition.  <u>Browning v. Snead</u>, 886 F. Supp. 547 (S.D. W. Va. 1995). And, arthritis is a serious medical condition because the condition causes chronic pain and affects the prisoner's daily activities.  <u>Finley v. Trent</u>, 955 F. Supp. 642 (N.D. W.Va. 1997); <u>Davis v. Merengo County Jail</u>, 2008 U.S. Dist. LEXIS 124427, * 22 - 23 (S.D. Ala. July 18, 2008) (Cassady, W.E., Mag. J.), <i>adopted by</i> <u>Davis v. Marengo County Jail</u>, 2008 WL 3852664 (S.D. Ala. Aug. 18, 2008) (unreported decision) (§ 1983 civil rights case, alleging excessive force and denial of medical care after pepper spray exposure and an approximately five minute delay in inmate's removal for fresh air; held: pepper spray exposure only constituted <i>de minimis</i> force and did not rise to the level of a Fourteenth or Fifth Amendment violation).

indifference to those medical needs which have been diagnosed as mandating treatment, conditions which obviously require medical attention, conditions which significantly affect an individual's daily life activities, or conditions which cause pain, discomfort or a threat to good health." See Morales Feliciano v. Calderon Serra, 300 F.Supp.2d 321, 341 (D.P.R. 2004) (citing Brock v. Wright, 315 F.3d 158, 162 (2nd Cir. 2003)).

Here, Plaintiff contends that after he was pepper-sprayed for 2 – 3 seconds in the February 1, 2016 incident, he was then left in his cell for at least 5 minutes before being permitted a cold 5-minute shower instead of the customary required 15 minutes. ECF No. 1 at 8.  He admits he was seen by RN Dana Mahanes after the incident, and told her he was "light headed and dizzy yet she told me 'I would be ok; I [had] gotten sprayed it won't last long." Id. Nonetheless, Plaintiff contends that his lungs and heart hurt with every heartbeat, and he had to stay up all night and the next day because he could not breathe when he lay down, and blood came out of his nose when he sneezed.  He avers that he put in for a sick call on February 2, 2016; that request disappeared; he then put in for subsequent sick calls because he had pain in his chest, but they "couldn't do much for me." Id.

Here, Plaintiff's deliberate indifference claims must fail.  Like the plaintiff in Davis v. Merengo County Jail, 2008 U.S. Dist. LEXIS 124427 at *24, not only did Plaintiff's brief exposure to pepper spray and five-minute delay in obtaining decontamination afterward not rise to the level of a *serious* medical need, here, Plaintiff has not named any medical personnel as Defendants in this action.  Not only are the two named Defendants not medical personnel, Plaintiff does not even attempt to allege that either of them ever attempted to interfere with or prevent him from receiving medical treatment.  Even his claim that the Defendants or other correctional officers might retaliate against him by making his sick requests disappear does not state a deliberate indifference claim against either of the named Defendants; that allegation was that he wrote a sick call request on February 2, 2016 "and gave it to the nurse yet somehow it went missing so I had to write another[.]" ECF No. 1-1 at 2.  It is apparent that that February 2, 2016 sick call request was delivered by Plaintiff

directly to "the nurse" and not handed to any correctional officer to give to the nurse, thus, there can be no claim that either of the named Defendants, let alone any other correctional officer, had anything to do with its disappearance.  Moreover, it is undisputed in the record that Plaintiff was seen and examined by a Registered Nurse immediately after decontamination from the pepper spray exposure; that nurse's report indicates that Plaintiff denied any injuries and his vital signs were stable; that she instructed him to notify Medical if he experienced any symptoms or further complaints, and Plaintiff voiced understanding. ECF 40-2 at 13. This claim likewise fails to state a claim upon which relief can be granted, and should be dismissed.

## V. Recommendation

In consideration of the foregoing, it is the undersigned's recommendation that the Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment [ECF No. 39] be **GRANTED** and that Plaintiff's Complaint [ECF No. 1] be **DENIED and DISMISSED with prejudice**.

**Within fourteen (14) days** of being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk of the Court is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket sheet. The Clerk of the Court is further directed to provide a copy of this Report and

Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

DATED: May 24, 2017

/s/ James E. Seibert_____
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE